**Electronically Filed
Supreme Court
SCWC-22-0000255
30-JUN-2026
08:46 AM
Dkt. 32 OPCD**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

HENRY K. TOLENTINO,
Petitioner/Defendant-Appellant.

SCWC-22-0000255

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000255; CASE NO. 1CPC-19-0001524)

JUNE 30, 2026

CONCURRING AND DISSENTING OPINION BY GINOZA, J.,
IN WHICH CIRCUIT JUDGE KIMURA, JOINS

This appeal deals with whether Petitioner/Defendant Henry Tolentino (**Tolentino**) was entitled to a voluntariness hearing for a statement he made upon being detained after a late-night traffic stop, and after he attempted to flee and had a physical altercation with police. According to an officer on scene, when Tolentino was finally detained and was standing up, "[h]e said that he was sorry and that he was just trying to get a

Zip Pac" (**Subject Statement**). Tolentino's application for writ of certiorari to this court presents one question:

> Did the Intermediate Court of Appeals err where it ruled that the defendant's constitutional rights were not violated where the trial court admitted statements made by the defendant without having a prior voluntariness hearing where said statements were made after police had repeatedly struck the defendant in the face, had tackled the defendant, and had handcuffed said defendant?

To the extent the majority opinion answers this question in the affirmative and holds that Tolentino is entitled to an evidentiary voluntariness hearing on remand to the Circuit Court of the First Circuit (**Circuit Court**), I concur. Should the Circuit Court determine that the Subject Statement was not voluntarily made, I agree a new trial is required.

To the extent the majority holds that a re-trial is required even if the Circuit Court determines the Subject Statement was voluntary, I respectfully dissent. In that circumstance, the majority requires another trial even though the Subject Statement admitted in the prior trial would again be admitted on re-trial. This is not required under prevailing law and the majority should not overrule precedent to achieve this result. See Jackson v. Denno, 378 U.S. 368, 394 (1964); State v. Goers, 61 Haw. 198, 201-02, 600 P.2d 1142, 1144 (1979); State v. Kane, 52 Haw. 484, 488, 479 P.2d 207, 210 (1971); Int. of I Child., 153 Hawai'i 223, 225, 229, 529 P.3d 701, 703, 707 (App. 2023).

I further dissent to the majority's purported new rule for an extremely wide range of circumstances that are not before this court and were never raised or briefed by the parties in this case. The majority seeks to impose requirements for when trial courts must hold pretrial evidentiary hearings for its broad definition of inculpatory statements. The majority's discussion of the myriad types of statements it has deemed inculpatory, and thus subject to its expansive requirements, is dicta. There are existing court rules that address defendant statements that the majority attempts to sweep into this case. Without any true adversarial testing, there are unknown consequences from the court's newly crafted rule. It's also unclear if the issues covered by the new rule must be raised by the parties or addressed *sua sponte* by trial courts, which must then assess pretrial every potential usage of a defendant's statements, including when testimony at trial could affect the analysis. This case deals with one statement that Tolentino asserted could be construed as a confession, regarding which Tolentino affirmatively filed a motion in Circuit Court and sought an evidentiary voluntariness hearing. The majority's new rule reaches issues far beyond what is presented in this case and which do not in any way decide this case.

## I.    Brief Background

At around 12:58 a.m. on September 21, 2019, Honolulu Police Department (**HPD**) Officer Kenneth Fontes (**Officer Fontes**) pulled Tolentino's vehicle over for speeding. After stopping, Tolentino exited the vehicle, which Officer Fontes testified lead him to determine that this was a high-risk traffic stop. Officer Fontes exited his vehicle, drew his firearm, pointed it at Tolentino, and ordered Tolentino to raise his hands. Tolentino complied. Officer Fontes then ordered Tolentino to get on the ground and holstered his firearm so that he could arrest Tolentino. According to Officer Fontes, Tolentino stood up, kicked off his slippers, and began running. Officer Fontes gave chase. After Tolentino stumbled, Officer Fontes attempted to gain control of him. According to Officer Fontes, Tolentino kicked him in his thigh and grazed him with a punch to his forehead. Tolentino denies kicking and punching Officer Fontes.

Tolentino fled again, stumbled into a parked car, fell and rolled into the street. Officer Fontes testified that to hold Tolentino on the ground, he hit Tolentino in the face with a closed fist three to five times. Tolentino again got up. Corporal Dannan Smith (**Corporal Smith**), who had also been chasing Officer Fontes and Tolentino on foot, testified that he then collided with Tolentino and Officer Fontes. According to Corporal Smith, he placed Tolentino in handcuffs, sat him up, and informed

Tolentino he was detained.[1]  Officer Fontes testified that as they stood Tolentino up, Tolentino stated "he was sorry and that he was just trying to get a Zip Pac."

Respondent/Plaintiff the State of Hawai'i (**State**) charged Tolentino via grand jury indictment with Assault Against a Law Enforcement Officer in the First Degree, in violation of Hawai'i Revised Statutes (**HRS**) § 707-712.5(1)(a) (2014).[2] Tolentino pled not guilty.

Before trial, Tolentino moved in limine to exclude and preclude from use at trial "[t]estimonial hearsay evidence regarding any alleged statements made by Defendant to the police subsequent to the alleged assault and after Defendant was placed in handcuffs, including but not limited to 'I'm sorry, I was just trying to get a ZipPac.'"

At the motions in limine hearing, Defense Counsel objected to admission of the Subject Statement, arguing that "it

---

[1]  Corporal Smith testified that after placing handcuffs on Tolentino and standing him up, Tolentino did not make any utterances that he "remember[s] or put in [his] report."

[2]  The October 17, 2019 Indictment states, in relevant part:

> On or about September 21, 2019, in the City and County of Honolulu, State of Hawai'i, HENRY K. TOLENTINO did intentionally or knowingly cause bodily injury to Kenneth Fontes Jr., a law enforcement officer who was engaged in the performance of duty, thereby committing the offense of Assault Against a Law Enforcement Officer in the First Degree, in violation of Section 707-712.5(1)(a) of the Hawai'i Revised Statutes.

could be deemed as a confession, so we'd like to get a voluntariness." The Circuit Court asked if Tolentino made the statement in response to a question. The Deputy Prosecuting Attorney (**DPA**) answered, "No," and Defense Counsel stated, "That's what they say." The Circuit Court preliminarily allowed the State to use Tolentino's statement as an admission by party-opponent, subject to the State laying a proper voluntariness foundation, ruling: "at this point the State will be allowed to use it unless . . . the evidence shows that it was in response to a question, then we'll have to revisit this."

Further, during the hearing, Defense Counsel stressed the "voluntariness" concern with respect to the "I'm sorry" portion of the Subject Statement, arguing that "obviously defendant would have a right to respond and to testify if we had an actual voluntariness hearing." After the court asked whether Tolentino was "in custody" at the time he made the Subject Statement and the DPA responded that the statement was made during the arrest, the Circuit Court said "at this point I think it's an excited utterance. . . . [I]f it comes out that he was coerced or if he was asked a question, . . . then I'm not going to allow it." In response, Defense Counsel repeated that the "I'm sorry part" is concerning because it appeared "like an admission." The Circuit Court then asked the DPA how the prosecution intended to elicit the Subject Statement. The DPA responded that it would be

"[t]hrough Officer Fontes[,]" with the following question: "Upon effectuating the arrest, did the defendant say anything without any provocation or solicitation, which is the words he used in his report." The Circuit Court then ruled that it would allow the line of questioning.

During trial, the DPA asked Officer Fontes if Tolentino "[said] anything to you without provocation or solicitation?", and the DPA responded "Yes." Outside the jury's presence, the DPA asked for a court ruling that Tolentino's anticipated statement "are utterances," and "were not the product of coercion or interrogative efforts." The Circuit Court ruled:

> I think that the statement or the utterance that was made by the defendant to Officer Fontes was an excited utterance.[3] It was -- there was no coercion, and there was no question asked by Officer Fontes when the defendant made the unsolicited excited utterance.

Defense Counsel did not object. Before the jury, the DPA proceeded to ask Officer Fontes what Tolentino said as he and Corporal Smith were standing Tolentino up, and Officer Fontes stated: "He said that he was sorry and that he was just trying to get a Zip Pac."

During the DPA's closing argument, she stated:

> The defendant kicked first. He threw the first punch. And we don't assault law enforcement officers. Reason and common sense. Maybe that's the excuse he had, because he didn't want to get caught for speeding, because he didn't

---

[3] Under Hawai'i Rules of Evidence Rule 803(b)(2) (2016), an excited utterance is "not excluded by the hearsay rule, even though the declarant is available as a witness," when "[a] statement relating to a startling event or condition [was] made while the declarant was under the stress of excitement caused by the event or condition."

> want to get caught because he was drunk.  In fact, <u>he says,
> I'm sorry, when he's finally detained.  He says, I'm sorry,
> I was just trying to get a Zip Pac</u>.  He was drunk.  He was
> hungry.  <u>He knew he did something wrong by saying I'm
> sorry, that he was just trying to get a Zip Pac</u>, ladies and
> gentlemen.

(Emphases added.)

On December 10, 2021, the jury acquitted Tolentino of Assault Against a Law Enforcement Officer in the First Degree, but found Tolentino guilty of the included offense of Assault Against a Law Enforcement Officer in the Second Degree.  The Circuit Court sentenced him to thirty days imprisonment.

Tolentino appealed to the ICA, asserting the Circuit Court erred when it allowed the State to use Tolentino's out-of-court statement at trial without first conducting a voluntariness hearing.  <u>State v. Tolentino</u>, No. CAAP-22-0000255, 2025 WL 1590193, at *1 (Haw. App. June 5, 2025) (SDO).

The ICA affirmed the Circuit Court judgment.  <u>Id.</u> at *6. The ICA stated that "HRS § 621-26 [(2016)][4] does not expressly require the trial judge to hold a voluntariness hearing, but the trial judge must make a voluntariness determination before the statement is admitted and without the jury present."  <u>Id.</u> at *1 (citing <u>State v. Hopkins</u>, No. CAAP-19-0000408, 2021 WL 4167382, at *3 (Haw. App. Sept. 14, 2021) (SDO); <u>State v. Green</u>, 51 Haw. 260,

---

[4] HRS § 621-26, governing "Confessions, when admissible," states: "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made."

8

264, 457 P.2d 505, 508 (1969)).  The ICA concluded the Circuit
Court did not err by not conducting a separate voluntariness
hearing because it "made a voluntariness determination at trial
before evidence of the out-of-court statement was admitted and
outside the presence of the jury."  Id. at *2 (footnotes omitted).

Tolentino applied for certiorari, presenting one
question for this court:

> Did the Intermediate Court of Appeals err where it ruled
> that the defendant's constitutional rights were not
> violated where the trial court admitted statements made by
> the defendant without having a prior voluntariness hearing
> where said statements were made after police had repeatedly
> struck the defendant in the face, had tackled the
> defendant, and had handcuffed said defendant?

## II.  Discussion

### A.  Remand for Voluntariness Hearing

I concur with the majority that the Circuit Court erred
in failing to hold an evidentiary voluntariness hearing to address
Tolentino's motion in limine and his assertion that the Subject
Statement was not voluntarily made and could be deemed a
confession.  Tolentino should have been allowed to testify at such
a hearing so that the Circuit Court could determine, out of the
presence of the jury, whether the Subject Statement was a
voluntary statement consistent with article I, sections 5 and 10
of the Hawai'i Constitution and HRS § 621-26.  No such hearing was
held, and that failure was not harmless error.  In Hawai'i, a
defendant has both a "constitutional and statutory right to a

9

judicial determination of the voluntariness of his confession." Goers, 61 Haw. at 201, 600 P.2d at 1144. Under the Hawai'i Constitution, "due process, based on article 1, section 5 . . . requires a statement to be 'voluntary' in order to be admissible." State v. Eli, 126 Hawai'i 510, 520 n.17, 273 P.3d 1196, 1206 n.17 (2012) (citation omitted). Additionally, under HRS § 621-26, "[t]he trial judge has a duty to determine the admissibility of an inculpatory statement out of the presence of the jury and prior to the jury's exposure to such evidence." Green, 51 Haw. at 264, 457 P.2d at 508 (citing Jackson, 378 U.S. 368).

Here, Tolentino was not allowed an opportunity to testify at a voluntariness hearing outside the presence of the jury to tell his side about what occurred in the circumstances surrounding his Subject Statement. An evidentiary hearing would allow the Circuit Court to properly assess the factual circumstances and determine whether the Subject Statement was voluntary. This case should thus be remanded to the Circuit Court to hold an evidentiary voluntariness hearing.

B.   Scope of Mandate Upon Remand

I respectfully dissent, however, from the majority's disposition which requires a new trial even if, after a voluntariness hearing upon remand, the Circuit Court determines the Subject Statement was voluntary. Rather, I would remand with instructions that the Circuit Court conduct a voluntariness

10

hearing and only require a new trial if the Circuit Court determines the Subject Statement was <u>not</u> voluntary.  This is the procedure prescribed as constitutionally valid in <u>Jackson v. Denno</u>, 378 U.S. at 393-95.

In <u>Jackson</u>, petitioner sought habeas corpus relief, asserting his conviction for murder was invalid because it was based on a confession that a New York state court did not properly determine was voluntary.  378 U.S. at 369-70.  The Supreme Court of the United States held petitioner was constitutionally entitled to "an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession."  <u>Id.</u> at 394.  The Supreme Court further clarified that "[i]t does not follow, however, that [petitioner] is <u>automatically entitled to a complete new trial</u> including a retrial of the issue of guilt or innocence."  <u>Id.</u> (emphasis added).  Rather, following an evidentiary hearing, if "it is determined that [petitioner's] confession was voluntarily given, admissible in evidence, and properly to be considered by the jury," the court saw "<u>no constitutional necessity at that point for proceeding with a new trial</u>, for [petitioner] has already been tried by a jury with the confession placed before it and has been found guilty."  <u>Id.</u> (emphases added).  Further, the Supreme Court stated: "Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that [petitioner's] confession was involuntary, there must

11

be a new trial on guilt or innocence without the confession's being admitted in evidence." Id. (footnote omitted).

The Supreme Court reversed a judgment denying petitioner's writ of habeas corpus and remanded the case to the district court "to allow the State a reasonable time to afford [petitioner] a hearing or a new trial, failing which [petitioner] is entitled to his release." Id. at 396.

In Hawai'i, akin to Jackson, this court has held that a post-trial voluntariness hearing sufficiently remedied a situation where the trial court failed to determine the voluntariness of a confession before it was admitted at trial. Goers, 61 Haw. at 202, 600 P.2d at 1144. In Goers, the trial court held a post-trial voluntariness hearing and found the confession voluntary. On appeal, this court stated that "[a]lthough it is clear that the judicial determination should have been made prior to jury consideration, the voluntariness issue was ultimately resolved by the court in a procedurally adequate manner." Id. (emphasis added) (concluding the error did not contribute to the conviction or prejudice any substantial rights of the defendant and was harmless (citation omitted)).

Hawai'i appellate courts have also applied the remedy from Jackson in other cases. In State v. Kane, this court held the defendant was unconstitutionally denied a fair hearing on his objections to appointed counsel and was entitled to a hearing. 52

Haw. at 488, 479 P.2d at 210. However, as for the proper disposition, this court stated "[w]e do not believe that the error below automatically requires a new trial." Id. Rather, based on Jackson, this court held that "[t]he outcome of such hearing should determine whether the further remedy of a new trial is necessary." Id. (citing Jackson, 378 U.S. 368). The decision in Kane concluded by stating:

> We remand the case to the circuit court for an investigation, to be put on the record, of the defendant's claim of ineffective representation. If the claim proves to be without merit that court may re-enter the judgment. If the claim is meritorious there should be a new trial.

Id.; see also Int. of I Child., 153 Hawai'i at 225, 229, 529 P.3d at 703, 707 (remanding "for a hearing on the basis of Father's request for new counsel . . . and a determination as to whether Father's claim of ineffective assistance of counsel at that point has merit," and stating that "[b]ased on the reasoning in Kane, the outcome of such a hearing should determine whether the further remedy of a new contested hearing is necessary" (citing Kane, 52 Haw. at 488, 479 P.2d at 210)).

Here, the proper remedy under Jackson and Goers for failing to hold an evidentiary voluntariness hearing is to remand with instructions that the Circuit Court conduct an evidentiary hearing to determine the voluntariness of Tolentino's statement. See Jackson, 378 U.S. at 396; Goers, 61 Haw. at 201-02, 600 P.2d at 1144. If the Circuit Court determines that Tolentino's

13

statement was voluntarily given, there is no constitutional necessity to conduct a new trial. See Jackson, 378 U.S. at 394; Goers, 61 Haw. at 201-02, 600 P.2d at 1144. In this case, remanding to the Circuit Court with such instruction for a voluntariness hearing protects Tolentino's constitutional rights while promoting judicial efficiency. This remedy does not violate Tolentino's due process rights because if the Circuit Court on remand determines that Tolentino's Subject Statement was involuntary, there must be a new trial without the statement being admitted into evidence.

In requiring a new trial for Tolentino even if the Subject Statement was voluntary, the majority insists that all voluntariness hearings must be conducted pretrial for known statements. To reach this result, the majority overrules forty-seven-year-old precedent in State v. Goers to the extent it permits voluntariness determinations after trial begins. Goers held that "a motion for a voluntariness hearing with regard to a confession may be brought at any time prior to the admission of the confession into evidence." 61 Haw. at 201, 600 P.2d at 1144. As noted, Goers also held — directly on point to this case — that a post-trial determination of voluntariness was procedurally adequate where the issue was not decided during the trial. Id. at 202, 600 P.2d at 1144.

I dissent to the majority's overruling of Goers and instead ruling in this case that a new trial is required regardless of whether the Subject Statement is deemed voluntary on remand by the Circuit Court. Goers, like Jackson v. Denno, properly recognized that it is constitutionally sound to allow a post-trial hearing to address whether a statement was voluntarily made and if there was error in admitting the statement to require a re-trial. A completely new trial is not always necessary to resolve what the majority states is a "discrete admissibility question." Further, "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." Dairy Rd. Partners v. Island Ins. Co., 92 Hawai'i 398, 421, 992 P.2d 93, 116 (2000) (internal quotation marks and citation omitted).

The majority relies on dicta in State v. Chang to support overruling Goers, but Chang does not support this. See State v. Chang, 144 Hawai'i 535, 445 P.3d 116 (2019).

In Chang, defendant Chang was charged with Operating a Vehicle Under the Influence of an Intoxicant, and the prosecution and Chang stipulated to consolidate a hearing on Chang's motion to suppress evidence with the bench trial. Id. at 537, 445 P.3d at 118. The dispositive issue on appeal was "whether Chang knowingly, intelligently, and voluntarily waived his right to testify for purposes of his suppression hearing." Id. at 543, 445

15

P.3d at 124 (footnote omitted).  This court unanimously held that Chang was not properly advised of his right to testify in the context of the consolidated proceeding.  Id. at 545, 445 P.3d at 126.

Thereafter, however, a split majority in Chang, *sua sponte*, further stated in dicta that prospectively "trial courts may not consolidate a motion to suppress hearing with a trial." Id. at 546, 445 P.3d at 127.  Chief Justice Recktenwald, joined by Justice Nakayama, dissented to this part of the Chang opinion. Id. at 556, 445 P.3d at 137 (Recktenwald, C.J., dissenting).  The dissenting opinion recognized that "[n]either party in this case at any time suggested that the trial court's consolidation of the suppression hearing and trial was improper . . . . rather, both parties expressly agreed to consolidate[.]"  Id.  Regardless, the majority in Chang overruled nearly forty years of precedent that had permitted consolidation when the parties agreed to do so on the record.  Id. at 556, 556 n.22, 445 P.3d at 137, 137 n.22 (specifically overruling State v. Doyle, 64 Haw. 229, 230, 638 P.2d 332, 333-34 (1981), and State v. Thomas, 72 Haw. 48, 53, 805 P.2d 1212, 1214 (1991)); see also id. at 556, 445 P.3d at 137 (Recktenwald, C.J., dissenting).

Here, the majority relies on the *sua sponte* dicta in the second part of Chang to extend it even further to where it does not apply.

16

First, the split majority in Chang did not base its prospective new rule on due process grounds. Rather, it based its new rule on Hawai'i Rules of Penal Procedures (**HRPP**) Rule 12(e) (eff. 2007) ("a motion to suppress made before trial shall be determined before trial"); the State's right to appeal an adverse ruling on a suppression motion under HRS § 641-13(7) (2016); and the "administrative complications" that result from consolidating a motion to suppress hearing with trial. Id. at 547-54, 445 P.3d at 128-35. The majority here appears to extrapolate these underlying reasons in Chang to this case, which involves wholly different circumstances. Here, the State never argued the Circuit Court should decide the voluntariness issue pretrial so it could appeal an adverse ruling, and Tolentino never raised any of the administrative complications discussed in Chang as to why he wanted a hearing on his voluntariness motion. Further, in Goers, this court explicitly stated "we hold that, *in spite of* the general requirement stated in H.R.P.P. Rule 12(b)(3) that motions to suppress be raised prior to trial, a motion for a voluntariness hearing with regard to a confession may be brought at *any time prior to the admission of the confession into evidence*." 61 Haw. at 201, 600 P.2d at 1144 (emphasis added). As discussed above, Goers also held that a post-trial voluntariness determination was constitutionally sound to remedy a failure to hold an earlier hearing. Id. at 202, 600 P.2d at 1144. Significantly, Chang did

17

not overrule Goers.  There is no basis here to overrule Goers or
for the majority in this case to require a new trial even if on
remand the Circuit Court determines that Tolentino's Subject
Statement was voluntary.

**C.    The Majority's New Rule Is Dicta**

In addition to resolving the question presented by
Tolentino's application for certiorari, the majority in this case
writes expansively to reach issues not before this court and which
have no bearing on the outcome of this case.

The majority purports to set out a broad new rule that a
trial court must conduct a pretrial voluntariness hearing for any
known inculpatory statement by a defendant.  Under the majority's
new rule, an inculpatory statement triggering a required pretrial
voluntariness hearing includes everything from confessions,
ambiguous admissions, a false alibi, inconsistent statements, and,
for the most part, any statement by the defendant that would be
relevant under Hawai'i Rules of Evidence Rule 401 (2016).

Without requiring parties to raise issues in the normal
course of the adversarial system, this new rule places a
tremendous burden on our already overburdened trial courts.
Apparently, trial courts must divine from the totality of the
record whether any statement by a defendant might potentially be
inculpatory and hold an evidentiary voluntariness hearing
pretrial.  This mandate applies regardless of whether a case

involves a singular statement, like in this case, or where a defendant has given lengthy and/or multiple statements. Moreover, the new mandate doesn't account for situations where a defendant's statement is known but it's not until evidence is adduced at trial that it becomes apparent the statement could infer guilt or could somehow affect the defendant's credibility. HRPP Rule 16(b)(1)(ii) (eff. 2012) requires the prosecution to disclose statements made by the defendant. It should be up to the parties to raise issues whether such statements may be inculpatory and to assert a need for a voluntariness hearing. Sometimes, that may not occur until the case is in the trial stage. There is also an existing rule addressing alibis that allows a court to set the time for exchange of information between the parties, which conflicts with the majority's new rule mandating pretrial determination. See HRPP Rule 12.1 (eff. 2007). These are just a few examples of how the majority's new rule creates unwanted or unintended consequences or conflicts with an existing rule.

Given the breadth of the majority's new rule, it appears a pretrial evidentiary voluntariness hearing could be required whenever there is a statement by a defendant. The majority's new rule also requires trial courts to enter findings and conclusions on such voluntariness hearings. And although a defendant can stipulate to the voluntariness of their statement and waive a

19

hearing, this can be done only after a new colloquy required under the new rule.

The majority points to State v. Zuffante as one example of a recent case demonstrating how this court's practice is to go beyond the facts and articulate a new rule when a case turns on a procedural right. See 157 Hawai'i 194, 203-04, 576 P.3d 243, 252-53 (2025). I disagree with this approach, as I did in Zuffante, when it comes to issues that parties do not raise or argue and overruling precedent *sua sponte*. See id. at 213, 576 P.3d at 262 (Ginoza, J., dissenting); see also Chang, 144 Hawai'i at 557, 445 P.3d at 138 (Recktenwald, C.J., dissenting) (emphasizing the majority's *sua sponte* overruling of precedent and new rule was not raised, briefed, or argued by the parties before this court and accordingly, it "should not change such a well-settled procedure on our accord without being fully informed by those who will be directly affected by that change").

Further, to the extent the majority contends this court often articulates operative rules to guide future cases, most of the cases the majority relies on are distinguishable because the parties raised arguments bearing on the court's new rules in those cases. See State v. Glenn, 148 Hawai'i 112, 123, 468 P.3d 126, 137 (2020) (defendant's question presented included whether a trial court must conduct a colloquy with the defendant regarding the penal-responsibility defense); State v. Tetu, 139 Hawai'i 207,

20

210-11, 386 P.3d 844, 847-48 (2016) (in the trial court, defense counsel requested access to private condominium where alleged burglary occurred, arguing defendant's constitutional rights to effective representation and to confront witnesses overrode privacy considerations); State v. Lewis, 94 Hawai'i 292, 294, 12 P.3d 1233, 1235 (2000), holding modified by State v. Monteil, 134 Hawai'i 361, 341 P.3d 567 (2014) (petitioner argued trial court was required to obtain a waiver of his right against self-incrimination prior to his testimony); Tachibana v. State, 79 Hawai'i 226, 233-34, 236, 900 P.2d 1293, 1300-01, 1303 (1995) (the State urged this court to adopt the "demand" approach, where a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right; instead, this court adopted the colloquy approach (citations omitted)).

Here, the majority's new and expansive rule is dicta[5] and is undertaken *sua sponte* with no adversarial testing.  No

_____

[5]  This court has defined *orbiter dictum* as follows:

> Strictly speaking an obiter dictum is a remark made or opinion expressed by a judge, in his decision upon a cause, by the way—that is, incidentally or collaterally and not directly upon the question before the court; or is any statement of law enunciated by the judge or court merely by way of illustration, argument, analogy, or suggestion.

State v. Hussein, 122 Hawai'i 495, 514, 229 P.3d 313, 332 (2010) (quoting Black's Law Dictionary 1177 (9th ed. 2009)); id. at 533, 229 P.3d at 351 (Moon, C.J., concurring and dissenting) (stating "'Obiter dictum'" is '[a] judicial comment made while delivering a judicial opinion, but *one that is unnecessary to the decision in the case and therefore not precedential* (although it may be considered persuasive).'" (emphasis added) (quoting Black's Law Dictionary 1102 (8th ed. 2004)); Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1256 (2006) ("If the court's judgment and the

party raised the issues addressed in the new rule, and the court neither received nor requested briefing on the myriad types of defendant statements and issues covered by this new rule.  State v. Fields, 115 Hawai'i 503, 529, 168 P.3d 955, 981 (2007), as amended on denial of reconsideration (Oct. 10, 2007) ("'The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" (quoting Ford v. United States, 533 A.2d 617, 624 (D.C. 1987)).

The majority takes the position that because a handful of questions by the court initiated a discussion at oral argument on aspects of voluntariness hearings, that was sufficient to give the parties a say on the majority's expansive opinion.

This unfortunate approach calls to mind the legislative history that lead this court to amend Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) in 2021, adding the following language:

> If an appellate court, when acting on a case on appeal, contemplates basing the disposition of the case wholly or in part upon an issue of plain error not raised by the parties through briefing, it shall not affirm, reverse, or vacate the case without allowing the parties the opportunity to brief the potential plain-error issue prior to disposition.

reasoning which supports it would remain unchanged, regardless of the proposition in question, that proposition plays no role in explaining why the judgment goes for the winner.  It is superfluous to the decision and is dictum.").

Order Amending Rule 28(b)(4) of the Hawai'i Rules of Appellate Procedure, SCRU-10-0000012 (Aug. 30, 2021), https://perma.cc/38HS-DMTK.

This case is even more problematic than plain error because the majority reaches a large expanse of issues, not needed to decide this case, without briefing by anyone on those issues. The amendment to HRAP 28(b)(4) was the judiciary's response to the Legislature's attempt to curb appellate courts' *sua sponte* rulings. During the 2021 legislative session, the Senate introduced S.B. 639, entitled "Relating to Courts of Appeal." The purpose of S.B. 639 was "to prohibit the courts of appeal from affirming, modifying, reversing, or vacating a matter on grounds other than those raised by the parties to the proceeding, unless the parties are provided the opportunity to brief the court." S.B. 639, S.D. 1, H.D. 1, C.D., 1, 31st Leg., Reg. Sess. (2021). The bill would have added a section to HRS Chapter 602 called "Sua sponte decisions," and would have required rehearing upon petition of any party should the court fail to afford the opportunity for the parties to submit supplemental briefing.[6] Id.

---

[6] Legislative history indicates the Legislature's concerns with *sua sponte* decisions. The Senate Judiciary Committee stated, "when a court decides a case on grounds not raised by the parties, it departs from the principle of party presentation and risks abusing its discretion." S. Stand. Comm. Rep. No. 701, in 2021 Senate Journal, at 1127. The House Judiciary & Hawaiian Affairs Committee stated that it found "this measure will ensure due process during the appeals process and permit parties, rather than the appellate court, to litigate their cases." H. Stand. Comm. Rep. No. 1720, in 2021 House Journal, at 1103.

Although the Legislature passed the bill, it was vetoed by Governor Ige, who stated in his statement of objections: "the concerns raised by this bill have been addressed by the judiciary. The Supreme Court of Hawaiʻi has proposed an amendment to the Hawaiʻi Rules of Appellate Procedure to address the concerns raised by this bill and is currently seeking public comment on the proposal." Governor's Message No. 1298, "Statement of Objections to Senate Bill No. 639," in 2021 House Journal, at 24. Accordingly, this court amended HRAP Rule 28(b)(4) to include the abovementioned language, following review by the HRAP Standing Committee and public comment. Order Amending Rule 28(b)(4) of the Hawaiʻi Rules of Appellate Procedure, SCRU-10-0000012 (Aug. 30, 2021), https://perma.cc/38HS-DMTK.

The first section of S.B. 639 explains the Legislature's view on why the bill was needed. See S.B. 639, S.D. 1, H.D. 1, C.D., 1, 31st Leg., Reg. Sess. (2021). First, it starts by pointing to one of the last published opinions by Justice Ruth Bader Ginsberg, United States v. Sineneng-Smith, 590 U.S. 371 (2020). In Sineneng-Smith, Justice Ginsberg explained that the American legal system follows the principle of party presentation: "[I]n both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Id. at 375 (citation omitted).

This is because "as a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief."  Id. at 375-76 (citation, footnote, brackets, and internal quotation marks omitted).  S.B. 639 further quoted Sineneng-Smith as follows: "[C]ourts are essentially passive instruments of government.  They 'do not, or should not, sally forth each day looking for wrongs to right.  [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.'"  Id. at 376 (citation omitted).[7]

S.B. 639 also quoted Justice Souter's concurring opinion in Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah: "Sound judicial decisionmaking requires both a vigorous prosecution and a vigorous defense of the issues in dispute, and a constitutional rule announced *sua sponte* is entitled to less deference than one addressed on full briefing and argument," and "a rule of law unnecessary to the outcome of the case, especially one not put into play by the parties, approaches without more the sort of dicta . . . which may be followed if sufficiently persuasive but which are not controlling."  508 U.S. 520, 572-73

---

[7]  I recognize "[t]he party presentation principle is supple, not ironclad," and "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate."  Sineneng-Smith, 590 U.S. at 376 (citation and footnote omitted).  These circumstances should be extraordinary.  See id. at 379.

25

(1993) (Souter, J., concurring) (citations and internal quotation marks omitted).

Second, S.B. 639 states:

> *Sua sponte* decisions that result from disregard of the principle of party presentation violate due process.  In those situations, the court substituted itself as a party and denied the parties the opportunity to litigate their own cases.  Due process is especially violated when an appellate court makes a *sua sponte* decision that alters the remedy sought by the parties.

S.B. 639, S.D. 1, H.D. 1, C.D., 1, 31st Leg., Reg. Sess. (2021). The bill then cites two decisions as raising concerns about the *sua sponte* actions by this court, one being State v. Chang, 144 Hawai'i 535, 445 P.3d 116.  The bill stated as to Chang:

> a majority of the Hawai[']i supreme court vacated a conviction when the court unilaterally held that a motion to suppress may not be consolidated with a trial even when the parties consent to such an action.  In making its decision, the majority overruled forty—year—old precedent. At no time did the majority afford the parties an opportunity to address the issue.

S.B. 639, S.D. 1, H.D. 1, C.D., 1, 31st Leg., Reg. Sess. (2021). Here, the majority now uses the dicta from Chang as a toehold to launch into a new broad realm of issues, again *sua sponte* without the issues being raised by the parties or being pertinent to deciding this case.

I don't believe legislation is the appropriate manner of addressing the concerns raised in S.B. 639, but that bill raised important and valid concerns.  This court appropriately adopted the 2021 amendment to HRAP Rule 28(b)(4).  This court should

26

adhere to that rule and, importantly for this case, the principle of party presentation that underlies its adoption.

Here, the majority believes a few questions at oral argument on issues that were never briefed allows the parties to be sufficiently heard on the court's broad *sua sponte* ideas. Respectfully, I fundamentally disagree that a court of last resort raising issues at oral argument not necessary to the case, and where the parties have not had a fair opportunity to provide supplemental briefing, comports with "our adversarial system of adjudication," where "we follow the principle of party presentation." Sineneng-Smith, 590 U.S. at 375. This court has stated that parties raising an issue for the first time in oral argument before the court of last resort are "late to the dance." Zane v. Liberty Mut. Fire Ins. Co., 115 Hawaiʻi 60, 76 n.16, 165 P.3d 961, 977 n.16 (2007). So too should this principle apply to this court's *sua sponte* raising of issues that parties may not be able to adequately respond to on the fly when raised for the first time at oral argument.

My concerns are not new. Justice Nakayama expressed her concerns about this court's *sua sponte* rulings and disregard of the party presentation principle in multiple separate opinions. See Erum v. Llego, 147 Hawaiʻi 368, 405 n.19, 465 P.3d 815, 852 n.19 (2020) (Nakayama, J., dissenting) (noting that to the extent courts have approved departures from the party presentation

27

principle in criminal cases, it is usually to protect a pro se litigant's rights (citation omitted)); Tax Found. of Hawai'i v. State, 144 Hawai'i 175, 223, 439 P.3d 127, 175 (2019) (Nakayama, J., dissenting) (asserting "Chief Justice's *sua sponte* consideration of whether Tax Foundation has taxpayer standing undermines the principle of party presentation that lies at the heart of our adversarial process" (formatting altered)); Castro v. Melchor, 142 Hawai'i 1, 18, 414 P.3d 53, 70 (2018) (Nakayama, J., concurring) ("I believe that upon consideration of the principles underlying our adversary system, and our role as a neutral arbiter therein, our discretionary authority should be used sparingly in circumstances where the interests of justice demand us to consider questions that the parties have not presented.").

Article VI, section 7 of the Hawai'i Constitution gives this court "power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals[.]" Pursuant to this authority, this court amended HRAP Rule 28(b)(4) when the Legislature sought to limit this court's *sua sponte* decision-making. This court should follow the rule and, important here, the underlying bedrock principle of party presentation.

In short, resolving this case does not require the imposition of a new constitutional rule reaching all types of inculpatory statements far beyond the circumstances of this case.

See, e.g., Rees v. Carlisle, 113 Hawaiʻi 446, 456, 153 P.3d 1131, 1141 (2007) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (citation omitted)); Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445-46 (1988) (same) (citations omitted).

Additionally, the majority's view that any error in failing to hold a pretrial voluntariness hearing must result in a re-trial, even if the subject statement is determined to be voluntary on remand, may lead to broad inefficiencies and an unfair system of justice.

I therefore respectfully dissent from the majority's new rule. This court has a standing committee for the Hawaiʻi Rules of Penal Procedure. To the extent this court wishes to adopt a sweeping new rule impacting a wide swath of issues related to defendant statements, the court should seek the guidance of the HRPP Committee and solicit the usual public comment on proposed new rules that would allow for consideration of the consequences of such a broad new rule.

### III. Conclusion

Based on the above, I would remand the case to the Circuit Court for an evidentiary voluntariness hearing, and, if the Circuit Court determines Tolentino's statement was involuntary, there must be a new trial without admission of the

statement into evidence.  However, if the Circuit Court determines Tolentino's statement was voluntary, I would direct the court to reenter the Judgment of Conviction and Sentence, and Tolentino could appeal the voluntariness decision.

/s/ Lisa M. Ginoza

/s/ Jordon J. Kimura